## LUM and another vs. HOAG and another.

SALE OF CHATTELS. (1) *When purchase from third party good, as against the true owner's creditors.* (2) *Delivery and change of possession.*

1. One who purchases chattels in good faith, for their full value, and pays for them by discharging the just debts of the true owner, is entitled to hold them as against such owner's other creditors, who have not a prior specific lien, although such purchase may have been made in form, and a bill of sale taken, from some one claiming title other than the true owner.
2. Where the property was brick in a kiln, and the vendee took a bill of sale and took control of the kiln, this was a sufficient delivery and change of possession (as against general creditors), although he delayed removing the brick until certain attachment liens thereon were discharged.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover the possession, or the value, of a quantity of brick. The case is stated in the first paragraph of the opinion. The plaintiffs appealed from a judgment in favor of the defendants.

*Weymouth & Porter, H. H. Blanchard* and *M. B. Williams,* for appellants.

*I. W. & G. W. Bird,* for respondents, contended, among other things, that the eighth instruction asked by plaintiffs (and which is recited in the opinion) was properly refused, because it ignored the question as to who owned the property at the time of the sale to plaintiffs. If Nelson Sickles owned it, plaintiffs could not acquire title as against him or his creditors, even by a *bona fide* sale from George Sickles. It also assumes that paying for the brick by paying the just debts of Nelson and the wages of the men who worked in the yard, constituted or were not inconsistent with, a purchase in good faith; whereas those facts should have been submitted to the jury to determine whether the sale was in good faith.

COLE, J.   The brick in controversy were taken by the defendant *Hoag* as deputy sheriff, upon a writ of attachment issued in favor of the defendant *Mead* against the property of Nelson Sickles.   The plaintiffs had bought the brick of George Sickles, a son of Nelson, but the claim of the defendant *Mead* was, that the brick were manufactured for the father, and really belonged to him, and that the sale to the plaintiffs was fraudulent and void as to Nelson's creditors.   Of course, if the brick were the property of George Sickles at the time of the sale by him to the plaintiffs, then they were not liable to be taken for the debts of Nelson, and the court so instructed the jury.   But it also appeared in evidence that when the plaintiffs purchased the brick of George, there were attachments against them in favor of creditors of Nelson, and of workmen for services in manufacturing the brick.   And almost the entire proceeds of the purchase money were applied by the plaintiffs to the payment of these debts of Nelson and the wages of the men who worked in the yard, and also to the discharge of a note of $100 which they held against Nelson.   Hence, assuming that the brick were the property of Nelson, still the plaintiffs claimed

that they had purchased them in good faith of his agent, and had paid their full value by discharging the just debts of Nelson, and that therefore they had a right to hold them as against Nelson's other creditors. It is this view of the case which, their eighth instruction, refused by the court, was intended to meet. This instruction was to the effect, that, if the jury believed from the evidence, that the plaintiffs bought the brick in good faith, and paid for the same by discharging the just debts of Nelson Sickles, and the wages of the men who worked in the yard making the brick, then they were entitled to recover. And was not the proposition correct, when applied to such a state of facts? It seems to us that it was.

There is no pretense that the plaintiffs did not pay the full value of the property. And the instruction is based upon the assumption that the purchase was in good faith, and that the consideration was applied to the payment of the just debts of Nelson Sickles. Why then should not the plaintiffs hold the. brick? We really cannot perceive any valid reason why they should not, upon such a state of facts. There is no question made about the delivery and the change of possession. The. brick were in a kiln, and the witness Lum testified that the plaintiffs took possession of the kiln immediately on the execution of the bill of sale by George Sickles, although he says they did not move any of the brick until the attachment liens upon them were discharged. But there was clearly all the delivery and change of possession that the nature of the property admitted of. It is suggested on the brief of the counsel for the defendants, that this instruction was properly refused because it ignored the question as to who owned the property at the time of the sale. This answer, however, is unsatisfactory. For the instruction assumes that Nelson Sickles owned the property; that there was a *bona fide* purchase of it from his son George; and that the proceeds of the the sale were applied to the payment of the just debts of Nelson. Thus the value

of the property has once been applied to the discharge of the attachment liens upon it, and the payment of a note due the plaintiffs from Nelson, and still another creditor of Nelson insists that it may be again taken to pay his debt. Suppose the plaintiffs should pay the debt due the defendant *Mead*, some other creditor of Nelson might claim that the property was liable to pay his claim, and the result would be, if this view of the law is correct, that a creditor would never be safe in taking property from his debtor in discharge of a debt.

In the case of *Selleck v. Phelps*, 11 Wis., 380–384, Mr. Justice PAINE, in the opinion, says : " Although a man may have purchased property under such circumstances as make the sale void as to creditors of the vendor, that fact ought not to give the creditors any more than the right to take the property or its value once, and apply it in payment of the vendor's debts. That is all they could have done if the sale had not been made at all." In that case the plaintiff, an assignee for the benefit of creditors, replevied property embraced in the assignment, from creditors of the assignor, who had attached it. Judgment was recovered in the replevin action against the assignee, on the ground that the assignment was void as to creditors. An execution was issued, and a return of the property not being had, the bail of the assignee paid the execution in full. Afterwards the property was seized upon an execution against the assignor in favor of another creditor. The court decided that the property was not again liable to be taken by the creditors of the assignor, but that the assignee might hold the property by virtue of the undertaking given in the replevin suit. In the case at bar it is assumed that the plaintiffs purchased the brick in good faith, and paid for the same by discharging the just debts of Nelson Sickles; in other words, have applied the full value of the property once to the payment of the claims of other creditors of the vendor. It seems to us that there is no principle of law or ethics which requires that they pay for it again to another creditor of Nelson Sickles. The defendant *Mead* is substanti-

ally in the same position he would have been had the brick been sold to satisfy the attachments.

*By the Court.*— The judgment of the circuit court is reversed, and a *venire de novo* awarded.

A motion for a rehearing was denied at the January term, 1873.